IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | C/A No.: 3:21-cv-00770-SVH |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Richland Community Health Care Assoc., ) | |
| The Eastover Community Club, GMK ) | DECREE AND JUDGMENT OF |
| Associates, Inc., Palmetto Health f/k/a ) | FORECLOSURE AND SALE |
| Palmetto Health Alliance, SCE&G, ) | |
| South Carolina Department of Revenue, ) | |
| and Richland County, South Carolina, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**I.     Background and Factual/Legal Determinations**

Plaintiff commenced this action to foreclose on property located in Richland County, South Carolina, and claim and delivery of chattel property, for failure to repay loans made through the United States Department of Agriculture. The defendants in this suit include the debtor, Richland Community Health Care Association ("RCHCA"), and several parties with lien interests in the debtor's real property.

Plaintiff's action stems from two promissory notes. RCHCA executed the first note ("Note 1") on October 29, 2003, promising to pay to the order of the United States the sum of $1,112,600.00 at an interest rate of 4.5% per annum. (ECF No. 1-2 at 1-2.) RCHCA executed the second note ("Note 2") on October 29, 2003, promising to pay to the order of the United States the sum of $370,100.00 at an interest rate of 4.5% per annum. (*Id.* at 3-4.)

Plaintiff has pled that RCHCA, in order to provide security for the loans, granted and delivered to Plaintiff one real estate Mortgage, recorded on November 4, 2003, covering real

1

property situated in Richland County, South Carolina. (Complaint, ECF No. 1, ¶ 9). The mortgage filed on November 4, 2003 ("the mortgage") secures the property that is the subject of this action and is of record in the Office of the Register of Deeds for Richland County, South Carolina in Book 871, at page 867. (ECF No. 1-3.) The mortgage secures four tracts of land, more specifically described in Exhibit A thereto (*See id.* at 5-6.).

To further secure its indebtedness owed Plaintiff, RCHCA executed security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003, which granted to Plaintiff a security interest in the equipment and furnishings of the facility. (ECF No. 1-4).

Plaintiff filed this suit on March 17, 2021, claiming that RCHCA defaulted on the loans, and that Plaintiff is therefore entitled to (1) judgment on the debt; (2) foreclosure on the real and personal property; and (3) costs and expenses, including reasonable attorneys' fees. The complaint alleges the following competing lien interests in RCHCA's property: (1) the Eastover Community Club ("Eastover") may have a claim by virtue of a reversion clause in two deeds from Eastover to RCHCA, the first dated May 18, 1995 and recorded May 19, 1995 and the second dated September 18, 1997 and recorded October 1, 1997; (2) SCE&G n/k/a Dominion Energy South Carolina, Inc. ("Dominion") may have a claim by virtue of an interest under the terms of an Easement over a portion of the real property described in the Complaint pursuant to an Easement dated November 13, 2002, and recorded February 24, 2003; (3) the U.S. Department of Health and Human Services Health Resources and Services Administration may have a lien by virtue of a Notice of Federal Interest recorded October 29, 2009; (4) GMK Associates, Inc. ("GMK") may have a claim by virtue of a judgment dated August 13, 2012 and recorded August 15, 2012; (5) Prisma Health – Midlands f/k/a Palmetto Health Alliance ("PH") may have a claim by virtue of a judgment dated and recorded May 28, 2013; (6) South Carolina Department of Revenue ("SCDOR") may have a

claim by virtue of tax liens recorded March 7, 2013 - April 9, 2015 (7) the Internal Revenue Service may have a claim by virtue of a federal tax lien recorded on July 18, 2017; and (8) Richland County, South Carolina may have a claim by virtue of tax liens for the years 2019 and 2020. (ECF No. 1 ¶¶ 13-20.)

All defendants were served with the summons and complaint; only GMK, SCDOR, and PH filed answers. (ECF Nos. 16; 19; 71.) The answering defendants did not expressly contest the foreclosure or priority. (*Id.*) Upon motion of Dominion, and with the consent of Plaintiff, the Court ordered that Dominion's Easement remain in full force and effect, that the Foreclosure proceed subject to Dominion's Easement, and that Dominion be dismissed without prejudice from this action. (ECF No. 52.) On January 6, 2022, Plaintiff filed a motion for default judgment and request for a damages hearing. (ECF No. 53.) None of the defendants responded to Plaintiff's motion for default judgment and request for a damages hearing.

Having reviewed the evidence and the entire record in this case, the Court concludes as follows:

1. RCHCA has defaulted on the obligations set out in Note 1 and Note 2.

2. RCHCA's refusal to pay the amount owed required Plaintiff to hire an attorney and incur costs to collect on the notes. Since the inception of the action, Plaintiff's attorneys have assumed responsibility for the institution of this action and have searched and updated the title on the real property from the date the current owner received the property, or the date the mortgage was executed, to the date of the filing of the *lis pendens*. They have been responsible for the preparation of the following pleadings:

(1) *Lis pendens*;
(2) Summons and Complaint;
(3) Motion for Default Judgment and Request for Damages Hearing;
(4) Proposed Decree of Foreclosure and Sale;

      (5)    Other documents as applicable pertaining to service and finalization of this action.

Additionally, Plaintiff's attorneys have arranged for service of process on each defendant. Further duties include: forwarding copies of this Order to each defendant; advising each defendant of the date the property will be sold; arranging and coordinating the amount to be bid by Plaintiff; representing Plaintiff at sale; and preparing after sale documentation, as required.

The promissory notes provide that Plaintiff is entitled to collection costs including reasonable attorneys' fees, and Plaintiff requests that the court award it $3,200.00 in attorneys' fees and $1,989.84 in costs. (*See* Affidavit of Counsel, ECF No. 53-10.) Plaintiff submits herewith an affidavit supporting its claim for attorneys' fees. In light of the potential liabilities inherent in a property action and the amount of the mortgage debt at issue, the attorneys' fees requested by Plaintiff are reasonable and shall be added to the total debt owed.

    3.    As of August 31, 2022, the amount due and owing on the notes, with interest at the rates provided therein, and other costs and expenses of collection, including attorneys' fees, secured by the notes and mortgage was as follows:

| | | |
|---|---|---:|
| a. | Principal due and interest as of 08/31/22 at the rate of $151.21 per diem | $1,801,858.28 |
| b. | Cost of collection prior to hearing (service, filing, etc.) | $     1,989.84 |
| c. | Attorneys' fees | $     3,200.00 |
| | TOTAL debt secured by notes and mortgage, including interest to August 31, 2022: | **$1,807,048.12** |

    4.    Interest continues to accrue on the debt stated above at a per diem rate of $151.21.

    5.    Plaintiff's Affidavit of Counsel demonstrates that the amount requested in the complaint is a sum certain. (*See* Affidavit of Counsel, ECF No. 53-10.)

6. The lien interests of Eastover, GMK, PH, SCDOR and Richland County, South Carolina are junior to Plaintiff's lien interest in the real property. As a result, Plaintiff's mortgage lien against RCHCA constitutes a first mortgage lien on the real property described in the Complaint (ECF No. 1-1).

7. The security interests against RCHCA's equipment and furnishings constitute a first lien on the property described in the security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003 (ECF No. 1-4).

8. Therefore, Plaintiff is entitled to foreclose on its mortgage and to recover the personal property in which it has a security interest. Further, Plaintiff is entitled to sell the property described in its mortgage (*see* ECF No. 1-1) and security agreements (*see* ECF No. 1-4) and apply the proceeds first to the costs and expenses of this action, next to the payment and discharge of the debt RCHCA owes Plaintiff.

9. Finally, the court notes that Plaintiff requests a deficiency judgment.

## II.     Legal Standard

Although "the government's power to foreclose [on property] emanates from state law, [28 U.S.C. Sections 2001 and 2002] govern the procedures to be followed [by federal courts]." *U.S. v. Wise*, No. 5:14-cv-844-FL, 2015 WL 5918027, at *6 (E.D.N.C. Oct. 9, 2015). Pursuant to Section 2001, a federal court has wide discretion to determine the terms and conditions under which the sale of real property shall be executed; however, the sale must take place "at the courthouse of the county . . . in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs." Further, under Section 2002, notice shall be "published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the

United States wherein the realty is situated." When personal property is sold under federal court order, 28 U.S.C. Section 2004 states that it should be sold in accordance with Section 2001, unless the court directs otherwise.

### III.     Order of Foreclosure and Sale

It is hereby **ORDERED**:

1. Judgment is entered in favor of Plaintiff in the amount of **$1,807,048.12** plus interest at a per diem rate of $151.21 beginning on August 31, 2022.

2. Judgment of foreclosure is entered as to Plaintiff's security interest in RCHCA's real and personal property at issue in this matter, as more fully described in Exhibit 1 to the Complaint (ECF No. 1-1) and in the security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003 (ECF No. 1-4).

3. The Special Referee, or his designee, shall sell at public auction the property described in Exhibit 1 to the Complaint (ECF No. 1-1) at the Richland County Courthouse in Columbia, South Carolina, or another commercially reasonable location(s) as may be determined by the Special Referee, or his designee, at the earliest possible date after having published notification of the sale in the **Columbia Star**, a newspaper of general circulation in Richland County, South Carolina, once a week for four weeks prior to the sale. The Special Referee, or his designee, shall sell at public auction at the Richland County Courthouse in Columbia, South Carolina, or another commercially reasonable location(s) as may be determined by the Special Referee, or his designee, the property described in the security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003 (ECF No. 1-4), at public auction at the earliest possible date after having published notification of the sale in the **Columbia Star**, a newspaper of general

circulation in Richland County, South Carolina, once a week for four weeks prior to the sale. The sale of the real and personal property itemized above shall be made on the following terms:

    a. For cash: The Special Referee, or his designee, shall require the highest bidder, other than the Plaintiff, to make a cash deposit of 5% of the bid as a guaranty of good faith and as security for compliance with the bid;

    b. If the highest bidder should fail to comply with the terms of the sale within 10 days after acceptance of the bid, the entire deposit shall be forfeited and applied to the debt owed Plaintiff. Thereafter, the Special Referee, or his designee, shall re-advertise and resell the property described in Exhibit 1 to the Complaint (ECF No. 1-1) on the earliest possible date and on the same terms and conditions described herein;

    c. The sale shall be subject to taxes and assessments, which includes real property taxes, existing easements, and easements and restrictions of record.

The following additional terms shall apply to the sale of the real property described in Exhibit 1 to the Complaint (ECF No. 1-1):

    a. Interest on the balance of the bid shall be paid to the day of compliance at the per diem rate of $151.21;

    b. Purchaser is to pay for the deed stamps and costs of recording the deed;

    c. As Plaintiff requests a deficiency judgment, bidding shall remain open until the 30th day after the sale, exclusive of the day of the sale, and any person other than the highest bidder at the sale or any representative thereof may enter a higher bid by making a cash deposit of 5% of the bid as a guaranty of good faith, and thereafter within the 30 day period any other person, other than the highest bidder at the sale or any representative thereof, may in a like manner raise the last highest bid. The successful purchaser shall be the person who submitted the highest bid within the 30 days and made the necessary deposit. If the 30th day falls on a Sunday, the bidding shall be closed on the Monday immediately following;

    d. Plaintiff may become a purchaser at the sale, but Plaintiff is precluded from making any bid on the property other than the last bid made by it on the day of the sale;

    e. Each defendant named herein and all persons, whoever claiming under them, shall be forever barred and foreclosed of all right, title, interest, and equity of redemption in the property described in Exhibit 1 to the Complaint (ECF No. 1-1), or any part thereof;

      f. If Plaintiff or Plaintiff's representative does not appear at the scheduled sale of the property described in Exhibit 1 to the Complaint (ECF No. 1-1), then the sale of the property shall be null, void and of no force and effect. In such event, the sale will be rescheduled for the next available sales day.

4.     The Special Referee, or his designee, shall apply the proceeds of the sale of the property described in Exhibit 1 to the Complaint (ECF No. 1-1) and in the security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003 (ECF No. 1-4), as follows:

      a. To the payment of the amount of the costs and expenses of this action and the expenses of the sale;

      b. To Plaintiff, or Plaintiff's attorney, for the debt and interest RCHCA owes Plaintiff, or such much thereof as the purchase money will pay on the same;

      c. Any surplus funds will be held pending further order of this court.

5.     If Plaintiff is the successful bidder at the sale for a sum not exceeding the amount of costs, expenses, and debt RCHCA owes Plaintiff, Plaintiff may pay to the Special Referee, or his designee, only the amount of the costs and expenses, accrediting the balance of the bid to RCHCA's indebtedness. Plaintiff is not liable for any debt remaining on the property.

6.     After the sale of the real property described in Exhibit 1 to the Complaint (ECF No. 1-1), the Special Referee, or his designee, shall make and deliver to the purchaser a deed in fee simple, and the purchaser shall be let into possession of the real property described in Exhibit 1 to the Complaint (ECF No. 1-1) upon production of the deed. All persons holding adversely to the purchaser shall be ejected by the United States Marshal (or deputy).

7.     The undersigned will retain jurisdiction to do all necessary acts incident to this foreclosure, including, but not limited, the issuance of a Writ of Assistance. After sale of the property described in Exhibit 1 to the Complaint (ECF No. 1-1), and as soon as the sale by the Special Referee, or his designee, is complete and has been approved by the court, RCHCA, or

other persons in possession, shall within 15 days of the date of approval by the court, move from the premises, and give up the real property itemized above without damage or vandalism. Upon the failure of RCHCA, or any other persons in possession, to vacate the property within 15 days of the date of approval by the court, the United States Marshal (or deputy) is authorized, empowered, and directed to enter upon the real property itemized above and evict them therefrom, unless prior to such date, RCHCA, or other persons in possession, obtain from the Court an order extending the time which RCHCA or any other persons in possession shall have to vacate the property. The United States Marshal (or deputy) is also authorized to effect removal from the real property itemized above any furniture or other possessions of RCHCA, or other persons in possession, and any interference with the activities of the Special Referee or the United States Marshal (or deputy) will be upon pain of contempt of court.

8. RCHCA, or any other persons in possession, shall assemble and turn over possession of all personal property described in the security agreements dated April 21, 1997, February 15, 2002, and October 29, 2003 (ECF No. 1-4), plus any increases, replacements, or substitutions, to Plaintiff within 30 days of this Order. RCHCA, or any other persons in possession, may contact Plaintiff to arrange a mutually agreeable time to turn over this property. Should RCHCA, or any other persons in possession, fail to turn over the personal property itemized above within 30 days, the United States Marshal (or deputy) is directed and authorized to take all reasonable steps necessary to seize that personal property and turn it over to Plaintiff for sale. This may include entering onto the real property described in Exhibit 1 (ECF No. 1-1), to locate and seize the personal property itemized above. Should the United States Marshal (or deputy) be required to seize the property, Plaintiff shall be responsible for taking possession of the property for purpose of sale.

IT IS SO ORDERED.

August 31, 2022
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge